UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

P&M CORPORATE FINANCE, LLC,

    Plaintiff,

v.

LAW OFFICES OF DAVID J. STERN, P.A.,
DAVID J. STERN, and JOHN DOE Fraudulent
Transferees 1-50,

    Defendants.
_____/

Hon.
Case No.:

# COMPLAINT

Plaintiff P&M Corporate Finance, LLC ("PMCF") sues Defendants, Law Offices of David J. Stern, P.A. ("LODJS"), David J. Stern ("Stern") (together, the "Stern Defendants"), and John Doe Fraudulent Transferees 1-50 (the "John Does") (collectively, "Defendants") and states:

## PRELIMINARY STATEMENT

1. PMCF brings this action to recover, as damages, its costs and attorneys' fees from the Stern Defendants pursuant to a valid and enforceable contractual indemnification agreement. The Stern Defendants have expressly refused to satisfy that obligation, although timely demand was made.

2. PMCF also brings this action to set aside various transfers PMCF believes, based upon information and belief, that LODJS made after PMCF made its demand for indemnity, and that those funds be used to honor the contractual obligations owing to PMCF.

## JURISDICTION, THE PARTIES AND VENUE

3. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00, exclusive of costs and interest.

16860328.6

Moreover, pursuant to paragraph 10 of the parties' contract (Exhibit A hereto), the parties further agreed that this Court has sole and exclusive subject matter and personal jurisdiction over this dispute.

4. Defendant LODJS is a Florida professional association that maintained its principal place of business in Broward County, Florida, until April 2014, when it was relocated to Miami-Dade County, Florida.

5. Defendant Stern is an individual who, upon information and belief, resides in Broward County, Florida. Stern is the founder and was sole owner of LODJS.

6. Plaintiff P&M Corporate Finance, LLC ("PMCF") is a Michigan limited liability company with its principal place of business in Southfield, Michigan.

7. The locations and identities of the John Does are unknown to PMCF at the time of filing.

8. The causes of action alleged in this Complaint arose and accrued in Broward County, Florida. Venue is proper in this District and Division under 28 U.S.C. § 1391(b) and as further agreed to between the parties in their Contract.

**GENERAL ALLEGATIONS**

9. LODJS was founded by Stern in 1994 and provided legal services and related non-legal support for residential mortgage foreclosures, including related issues such as residential foreclosure processing, bankruptcy, eviction, second lien monitoring, and real estate closings.

10. In 2007, Stern began exploring the idea of selling the non-legal operations of his businesses. The declining economy and rise in foreclosures made such a sale potentially attractive.

16860328.6

**PMCF's Agreement to Provide Investment Banking Services**

11. On or about June 11, 2007, PMCF and LODJS entered into a contract (the "Contract") (Exhibit A hereto) for PMCF to provide sell-side investment banking services to LODJS in connection with the sale of the non-legal operations of Stern's businesses.

12. Under paragraph 8 of the Contract, LODJS promised to, among other things, indemnify and hold each Indemnified Party (as defined in the Contract) harmless "against all claims, losses, damages, liabilities, expenses and obligations (including, without limitation, attorneys' fees, costs, interest, judgments, awards, penalties, costs of third party consultants and experts, court costs and all amounts paid in investigation, defense or settlement of any of the foregoing)" which:

> arise out of, are based upon or are related to (1) PMCF's engagement under this Agreement or the rendering of services under this Agreement (including any services rendered prior to the date of this Agreement and including any claims by any person or entity relating to compensation in connection with the Transaction) or the rendering of additional services by PMCF as requested by Company, (2) any breach of this Agreement by Company or its owners, or (3) any misrepresentation of a material fact by the Company or its owners, or omission, by the Company or its owners, of a material fact necessary in order to make the statements provided not misleading in light of the circumstances under which such statements are made (collectively, "Damages").

13. The Contract further provides that LODJS's liability under Paragraph 8 shall not apply "only if, and to the extent that, a court having competent jurisdiction has determined by final judgment (not subject to further appeal) that such Damages resulted primarily and directly from the bad faith or intentional misconduct of such Indemnified Party."

14. From approximately June 2007 through January 2010, and pursuant to the Contract, PMCF provided sell-side investment banking services to the Stern Defendants, which

ultimately culminated in the closing of a complex business transaction that included the sale of the non-legal foreclosure operations of LODJS (the "Transaction").

## The Transaction and Subsequent Litigation

15. The Transaction closed on January 15, 2010, with an entity known as Chardan 2008 China Acquisition Corp. participating in the purchase of LODJS' non-legal foreclosure operations. Almost simultaneously with the closing of the Transaction, Chardan 2008 China Acquisition became known as DJSP Enterprises, Inc. ("DJSP").

16. As a result of the closing of the Transaction, Stern received approximately $52,469,000 of cash and also promissory notes for assuring payment of many additional millions of dollars.

17. After the Transaction closed, LODJS became the subject of an investigation by the Florida Attorney General's office and eventually lost all of its major clients. Accordingly, LODJS began to wind down its business and ceased operations effective March 31, 2011.

18. On January 3, 2012, DJSP sued the Stern Defendants and PMCF in connection with the Transaction in a Broward County, Florida state court action entitled *DJSP Enterprises, Inc. v. David J. Stern, et al.*, Case No 12-00096 (the "DJSP Litigation").

19. In mid-2014, the Stern Defendants settled with DJSP and were dismissed from the DJSP Litigation. Although the terms of that settlement are confidential, PMCF believes that a substantial sum of money was paid by the Stern Defendants to DJSP.

20. On February 3, 2015, the Court in the DJSP Litigation granted summary judgment in favor of PMCF and against DJSP on all of DJSP's claims in the DJSP Litigation, and thereafter entered judgment in PMCF's favor (Exhibit B hereto).

21. On April 19, 2012 the Stern Defendants were notified of PMCF's intent to enforce the rights under Paragraph 8 of the Contract. (Exhibit C hereto).

22. During the course of defending the DJSP Litigation, PMCF incurred substantial costs and attorneys' fees that are subject to the Stern Defendants' indemnification obligation, and which are well in excess of the $75,000 jurisdictional amount in controversy.

### LODJS Collects Substantial Fees During Its Wind-Down

23. During the pendency of the DJSP Litigation, and in connection with the wind-down of LODJS, LODJS filed several lawsuits against its former clients to collect outstanding fees due to LODJS.

24. On information and belief, during the period of approximately 2011 through 2014, LODJS obtained millions of dollars (the "Collected Fees") from its former clients.

25. After collecting the Collected Fees, upon information and belief, LODJS transferred part or all of the Collected Fees to the John Does.

26. Upon information and belief, LODJS made the transfers when the Stern Defendants had knowledge of the DJSP Litigation, and even after PMCF's demand for indemnification, with the intent to prevent its creditors, such as PMCF, from accessing the Collected Fees through rightful claims.

27. At the time of this filing, the identities of the John Does are unknown to PMCF.

### The Stern Defendants' Refusal to Indemnify PMCF

28. The Stern Defendants have had notice of PMCF's intent to seek indemnification from LODJS since at least April 19, 2012, when PMCF notified LODJS that it was preserving its rights to seek indemnification under the Contract. (Exhibit C hereto).

29. On April 24, 2012, LODJS's attorneys acknowledged receipt of the April 19, 2012 letter and notified PMCF that they would "respond further once we have had an opportunity to discuss it." (Exhibit D hereto).

30. On May 1, 2013, LODJS's attorneys wrote to counsel for PMCF again acknowledging receipt of PMCF's April 19, 2012 letter, but denying that PMCF had "any right to indemnity under the terms of the [Agreement] for the claim made against it" in the DJSP Litigation in connection with the Transaction. (Exhibit E hereto).

31. Since May 1, 2013, the Stern Defendants have continually refused to indemnify PMCF for its expenses relating to the Transaction, including, but not limited to, its attorneys' fees and costs in defending the claims asserted against it in the DJSP Litigation.

32. All conditions precedent to bringing this action have been performed, waived or excused.

## CAUSES OF ACTION

### COUNT I
Breach of Contract – Indemnification
(By PMCF against LODJS)

33. PMCF restates the allegations set forth in paragraphs 1-32 as through fully set forth herein.

34. PMCF has an enforceable Contract with LODJS.

35. PMCF performed its duties under the Contract.

36. LODJS is obligated by the Contract to indemnify PMCF against expenses it incurred in connection with the DJSP Litigation.

37. LODJS has breached the Contract as more fully set forth above.

38. As a result of LODJS's breach of the Contract, PMCF has suffered substantial damages.

WHEREFORE, PMCF respectfully requests that this Court enter a judgment against LODJS, award PMCF compensatory damages in an amount to be determined by the Court, prejudgment interest, attorneys' fees and costs pursuant to paragraph 8 of the Contract, and grant PMCF such other and further relief as this Court deems just and proper.

## COUNT II
Breach of Contract – Indemnification/Alter Ego
(By PMCF against Stern)

39. PMCF restates the allegations set forth in paragraphs 1-32 as through fully set forth herein.

40. At all material times, Stern has been the sole owner and principal of LODJS.

41. Stern dominated and controlled both LODJS and the Transaction.

42. Stern received virtually all of the proceeds of the Transaction, with LODJS receiving virtually none.

43. By routing the Sale Proceeds to Stern rather than to LODJS, Stern willfully drained LODJS of monies that Stern knew would be sought by creditors such as PMCF.

44. Stern routed the Sale Proceeds to himself rather than to LODJS with the intent to deprive creditors such as PMCF of satisfaction for their rightful claims.

45. By this wrongful conduct, Stern remains liable for LODJS's obligations relating to the Transaction as an alter ego of LODJS.

46. LODJS is obligated to PMCF as set forth above.

47. As a result of Stern's actions, and his liability for the actions of LODJS, PMCF has suffered substantial damages.

16860328.6

WHEREFORE, PMCF respectfully requests that this Court enter a judgment against Stern, award PMCF compensatory damages in an amount to be determined by the Court, prejudgment interest, attorneys' fees and costs pursuant to paragraph 8 of the Contract, and grant PMCF such other and further relief as this Court deems just and proper.

### COUNT III
Fraudulent Transfer under Uniform Fraudulent Transfer Act,
§ 726.105(1)(a), Fla. Stat. —Actual Fraud
(<u>LODJS, Stern, and John Does</u>)

48. PMCF restates the allegations set forth in paragraphs 1-32 as through fully set forth herein.

49. On information and belief, the Stern Defendants' Collected Fees during LODJS's wind down process totaled between approximately $15 million and $50 million.

50. During the time that they were pursuing the Collected Fees, the Stern Defendants were aware of the DJSP Litigation or the potential for such litigation to occur, and that the DJSP Litigation would result in substantial costs to the Stern Defendants, including the right of PMCF to indemnity.

51. After collecting the substantial Collected Fees through its wind-down process, upon information and belief, LODJS transferred part or all of the Collected Fees to the John Does prior to or in conjunction with the resolution of the DJSP Litigation (the "Fraudulent Transfers").

52. The Stern Defendants transferred the Collected Fees to Stern and/or the John Does Fraudulent Transfers with actual intent to hinder, delay, or defraud PMCF from recovering on its rightful claim for indemnification.

53. Upon information and belief, one or more factors of §726.105(2), Fla. Stat. were present with respect to the transfers in question.

8

54. As a direct and proximate result of the Fraudulent Transfers, PMCF has not been indemnified or fully satisfied by the Stern Defendants pursuant to the terms of the Contract.

55. The Fraudulent Transfers are avoidable under § 726.108(1)(a), Fla. Stat.

56. As a result of the foregoing, PMCF is entitled to avoidance of the Fraudulent Transfers pursuant to the Florida Uniform Fraudulent Transfers Act.

WHEREFORE, PMCF respectfully requests that this Court enter a judgment against Defendants pursuant to the Florida Uniform Fraudulent Transfers Act, avoiding and recovering the Fraudulent Transfers, or the value thereof, from the Defendants, for PMCF's benefit and any other relief as the circumstances may require.

## COUNT IV
Fraudulent Transfer under Uniform Fraudulent Transfer Act,
§ 726.105(1)(b), Fla. Stat. —Constructive Fraud
(LODJS, Stern, and John Does)

57. PMCF restates the allegations set forth in paragraphs 1-32 as through fully set forth herein.

58. On information and belief, the Stern Defendants' Collected Fees during LODJS's wind down process totaled between approximately $15 million and $50 million.

59. During the time that they were pursuing the Collected Fees, the Stern Defendants were aware of PMCF's demand for indemnification or the potential for such a demand to occur.

60. After collecting the substantial Collected Fees through its wind-down process, LODJS transferred part or all of the Collected Fees to Stern and/or the John Does, including, upon information and belief, amounts paid to DJSP to resolve the claims against the Stern Defendants to or in conjunction with the resolution of the DJSP Litigation.

61. The Stern Defendants transferred the Collected Fees to the John Does without receiving a reasonably equivalent value in exchange for the Fraudulent Transfers.

62. At the time of the Fraudulent Transfers, LODJS was engaged or was about to engage in a business or transaction for which the remaining assets of LODJS were unreasonably small in relation to the business.

63. At the time of the Fraudulent Transfers, LODJS intended to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay as they came due.

64. As a direct and proximate result of the Fraudulent Transfers, PMCF has not been indemnified and fully satisfied by the Stern Defendants pursuant to the terms of the Contract.

65. The Fraudulent Transfers are avoidable under §726.108(1)(a), Fla. Stat.

66. As a result of the foregoing, PMCF is entitled to avoidance of the Fraudulent Transfers pursuant to the Florida Uniform Fraudulent Transfers Act.

WHEREFORE, PMCF respectfully requests that this Court enter a judgment against Defendants pursuant to the Florida Uniform Fraudulent Transfers Act, avoiding and recovering the Fraudulent Transfers, or the value thereof, from the Defendants, for PMCF's benefit, and any other relief the circumstances may require.

Dated: April 7, 2015

        Respectfully submitted,

        WALDMAN TRIGOBOFF HILDEBRANDT
        MARX & CALNAN, P.A.
        Co-counsel for P&M Corporate Finance, LLC
        500 East Broward Boulevard, Suite 1700
        Fort Lauderdale, Florida 33394
        Telephone: (954) 467-8600
        Facsimile: (954) 467-6222

        By: ____/s/ Glenn J. Waldman_____
            Glenn J. Waldman
                Florida Bar No. 374113
            Craig J. Trigoboff
                Florida Bar No. 880541

-AND-

HONIGMAN MILLER SCHWARTZ AND COHN LLP
Co-Counsel for P&M Corporate Finance, LLC
660 Woodward Avenue, Suite 2290
Detroit, Michigan 48226
Telephone: (313) 465-7412
Facsimile: (313) 465-7413

Raymond W. Henney, Esq.
(Pro Hac Vice Admission Pending)
Michael P. Hindelang, Esq.
(Pro Hac Vice Admission Pending)
John J. Rolecki, Esq.
(Pro Hac Vice Admission Pending)

11

16860328.6