**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

P&M CORPORATE FINANCE, LLC,

      Plaintiff,                                  Hon. K. Michael Moore
                                            Case No.: 15-CV-60736-KMM

v.

LAW OFFICES OF DAVID J. STERN, P.A.,
DAVID J. STERN, JOHN DOE Fraudulent
Transferees 1-50, DJSP ENTERPRISES, INC.,
DAL GROUP, LLC, DJS PROCESSING, LLC,
DAL HOLDING COMPANY-DS, PROFESSIONAL
TITLE AND ABSTRACT COMPANY OF
FLORIDA, LLC

      Defendants.
_____/

**<u>SECOND AMENDED COMPLAINT</u>**

Plaintiff P&M Corporate Finance, LLC ("PMCF") sues Defendants, Law Offices of David J. Stern, P.A. ("LODJS"), David J. Stern ("Stern") (together, the "Stern Defendants"), John Doe Fraudulent Transferees 1-50 (the "John Does"), DJSP Enterprises, Inc. f/k/a Chardan 2008 China Acquisition Corp. ("DJSP"), DAL Group, LLC ("DAL"), DJS Processing, LLC ("DJS"), DAL Holding Company-DS f/k/a DJS Servicing, LLC ("DSI"), and Professional Title and Abstract Company of Florida, LLC ("PTA LLC") (together, the "DJSP Defendants"), and states as follows:

**<u>PRELIMINARY STATEMENT</u>**

1.      PMCF brings this action to recover, as damages, its costs and attorneys' fees from the Stern Defendants pursuant to a valid and enforceable contractual indemnification agreement. The Stern Defendants have expressly refused to satisfy that obligation, although timely demand was made.

2.      PMCF also brings this action to set aside various transfers PMCF believes, based upon information and belief, that LODJS made after PMCF made its demand for indemnity, and that those funds be used to honor the contractual obligations owing to PMCF.

3.      PMCF also brings this action to set aside a transfer PMCF believes, based upon information and belief, that the Stern Defendants made to the DJSP Defendants after PMCF made its demand for indemnity, and that those funds be used to honor the contractual obligations owing to PMCF.

## JURISDICTION, THE PARTIES AND VENUE

4.      This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.   The amount in controversy exceeds $75,000.00, exclusive of costs and interest. Moreover, pursuant to paragraph 10 of the parties' contract (Exhibit A hereto), the parties further agreed that this Court has sole and exclusive subject matter and personal jurisdiction over this dispute.

5.      Plaintiff P&M Corporate Finance, LLC ("PMCF") is a Michigan limited liability company with its principal place of business in Southfield, Michigan.

6.      Defendant LODJS is a Florida professional association that maintained its principal place of business in Broward County, Florida, until April 2014, when it was relocated to Miami-Dade County, Florida.

7.      Defendant Stern is an individual who, upon information and belief, resides in Broward County, Florida.  Stern is the founder and was sole owner of LODJS.

8.      The locations and identities of the John Does are unknown to PMCF at the time of filing.

9.      Defendant DJSP is a British Virgin Islands company with its principal place of business in Broward County, Florida.

10.      Defendant DJS is a Delaware limited liability company with its principal place of business in Broward County, Florida.

11.      Defendant DSI is a Delaware limited liability company with its principal place of business in Broward County, Florida.

12.      PTA LLC is a Delaware limited liability company with its principal place of business in Broward County, Florida.

13.      The causes of action alleged in this Complaint arose and accrued in Broward County, Florida. Venue is proper in this District and Division under 28 U.S.C. § 1391(b) and as further agreed to between the parties in their Contract.

## GENERAL ALLEGATIONS

14.      LODJS was founded by Stern in 1994 and provided legal services and related non-legal support for residential mortgage foreclosures, including related issues such as residential foreclosure processing, bankruptcy, eviction, second lien monitoring, and real estate closings.

15.      In 2007, Stern began exploring the idea of selling the non-legal operations of his businesses.   The declining economy and rise in foreclosures made such a sale potentially attractive.

### PMCF's Agreement to Provide Investment Banking Services

16.      On or about June 11, 2007, PMCF and LODJS entered into a contract (the "Contract") (Exhibit A hereto) for PMCF to provide sell-side investment banking services to LODJS in connection with the sale of the non-legal operations of Stern's businesses.

3

17.     Under paragraph 8 of the Contract, LODJS promised to, among other things, indemnify and hold each Indemnified Party (as defined in the Contract) harmless "against all claims, losses, damages, liabilities, expenses and obligations (including, without limitation, attorneys' fees, costs, interest, judgments, awards, penalties, costs of third party consultants and experts, court costs and all amounts paid in investigation, defense or settlement of any of the foregoing)" which:

> arise out of, are based upon or are related to (1) PMCF's engagement under this Agreement or the rendering of services under this Agreement (including any services rendered prior to the date of this Agreement and including any claims by any person or entity relating to compensation in connection with the Transaction) or the rendering of additional services by PMCF as requested by Company, (2) any breach of this Agreement by Company or its owners, or (3) any misrepresentation of a material fact by the Company or its owners, or omission, by the Company or its owners, of a material fact necessary in order to make the statements provided not misleading in light of the circumstances under which such statements are made (collectively, "Damages").

18.     The Contract further provides that LODJS's liability under Paragraph 8 shall not apply "only if, and to the extent that, a court having competent jurisdiction has determined by final judgment (not subject to further appeal) that such Damages resulted primarily and directly from the bad faith or intentional misconduct of such Indemnified Party."

19.     Moreover, the Contract, at Paragraph 8(c) requires LODJS to obtain a full release of claims against PMCF before settling any lawsuit:  "The Company shall not, except with the written consent of [PMCF], consent to … settlement of any pending or threatened claim related to or arising out of this engagement which does not include as an unconditional term thereof the giving by the claimant or plaintiff to [PMCF] an unconditional release, and holding [PMCF] harmless, from all liability in respect of such third party claim or demand."

17159795.6

20.     From approximately June 2007 through January 2010, and pursuant to the Contract, PMCF provided sell-side investment banking services to the Stern Defendants, which ultimately culminated in the closing of a complex business transaction that included the sale of the non-legal foreclosure operations of LODJS (the "Transaction").

### The Transaction and Subsequent Litigation

21.     The Transaction closed on January 15, 2010, with an entity known as Chardan 2008 China Acquisition Corp. participating in the purchase of LODJS' non-legal foreclosure operations.  Almost simultaneously with the closing of the Transaction, Chardan 2008 China Acquisition became known as DJSP Enterprises, Inc.

22.     In connection with the Transaction, Stern entered into a services agreement with DJSP, DAL and DJS.  (Exhibit B hereto.)  Pursuant to this agreement, Stern would "serve as Chairman of the Board, if approved by the Boards, and the President of each DAL, [DJS], and [DJSP]."  (*Id.* ¶ 3(a)).

23.     As a result of the closing of the Transaction, Stern received approximately $52,469,000 of cash and also promissory notes for assuring payment of many additional millions of dollars.

24.     After the Transaction closed, LODJS became the subject of an investigation by the Florida Attorney General's office and eventually lost all of its major clients.  Accordingly, LODJS began to wind down its business and ceased operations effective March 31, 2011.

25.     On January 3, 2012, DJSP, DAL and DJS sued the Stern Defendants in connection with the Transaction in a Broward County, Florida state court action entitled *DJSP Enterprises, Inc. v. David J. Stern, et al.*, Case No 12-00096 (the "DJSP Litigation").  DJSP also sued PMCF in connection with the Transaction.

26.     In mid-2014, the Stern Defendants settled with the plaintiffs and were dismissed from the DJSP Litigation.  Although the terms of that settlement are confidential, PMCF believes that a substantial sum of money was paid by the Stern Defendants to DJSP Defendants.

27.     The Stern Defendants neither sought nor obtained the written consent of PMCF to their settlement of the DJSP Litigation.

28.     As the DJSP Litigation continued against PMCF, the Stern Defendants, upon information and belief, did not obtain an unconditional release of PMCF from the claims in the DJSP Litigation or hold PMCF harmless from all liability in the DJSP Litigation.

29.     On February 3, 2015, the Court in the DJSP Litigation granted summary judgment in favor of PMCF and against DJSP on all of DJSP's claims in the DJSP Litigation, and thereafter entered judgment in PMCF's favor (Exhibit C hereto).

30.     On April 19, 2012 the Stern Defendants were notified of PMCF's intent to enforce the rights under Paragraph 8 of the Contract.  (Exhibit D hereto).

31.     During the course of defending the DJSP Litigation, PMCF incurred substantial costs and attorneys' fees that are subject to the Stern Defendants' indemnification obligation, and which are well in excess of the $75,000 jurisdictional amount in controversy.

**LODJS Collects Substantial Fees During Its Wind-Down**

32.     During the pendency of the DJSP Litigation, and in connection with the wind-down of LODJS, LODJS filed several lawsuits against its former clients to collect outstanding fees due to LODJS.

33.     On information and belief, during the period of approximately 2011 through 2014, LODJS obtained millions of dollars (the "Collected Fees") from its former clients.

17159795.6

34.     After collecting the Collected Fees, upon information and belief, LODJS transferred part or all of the Collected Fees to the John Does and/or the DJSP Defendants.

35.     Upon information and belief, LODJS made the transfers when the Stern Defendants had knowledge of the DJSP Litigation, and even after PMCF's demand for indemnification, with the intent to prevent its creditors, such as PMCF, from accessing the Collected Fees through rightful claims.

36.     At the time of this filing, the identities of the John Does are unknown to PMCF.

## The Stern Defendants' Refusal to Indemnify PMCF

37.     The Stern Defendants have had notice of PMCF's intent to seek indemnification from LODJS since at least April 19, 2012, when PMCF notified LODJS that it was preserving its rights to seek indemnification under the Contract.  (Exhibit D hereto).

38.     On April 24, 2012, LODJS's attorneys acknowledged receipt of the April 19, 2012 letter and notified PMCF that they would "respond further once we have had an opportunity to discuss it."  (Exhibit E hereto).

39.     On May 1, 2013, LODJS's attorneys wrote to counsel for PMCF again acknowledging receipt of PMCF's April 19, 2012 letter, but denying that PMCF had "any right to indemnity under the terms of the [Agreement] for the claim made against it" in the DJSP Litigation in connection with the Transaction.  (Exhibit F hereto).

40.     Since May 1, 2013, including after entering into a settlement agreement regarding the DJSP Litigation, the Stern Defendants have continually refused to indemnify PMCF for its expenses relating to the Transaction, including, but not limited to, its attorneys' fees and costs in defending the claims asserted against it in the DJSP Litigation.

7

41.     All conditions precedent to bringing this action have been performed, waived or excused.

## CAUSES OF ACTION

### COUNT I
Breach of Contract – Indemnification
(As to Defendant LODJS Only)

42.     PMCF restates the allegations set forth in paragraphs 1-41 as through fully set forth herein.

43.     PMCF has an enforceable Contract with LODJS.

44.     PMCF performed its duties under the Contract.

45.     LODJS is obligated by the Contract to indemnify and hold PMCF harmless against expenses it incurred in connection with the DJSP Litigation.

46.     LODJS has breached the Contract as more fully set forth above.

47.     As a result of LODJS's breach of the Contract, PMCF has suffered substantial damages.

WHEREFORE, PMCF respectfully requests that this Court enter a judgment against LODJS, award PMCF compensatory damages in an amount to be determined by the Court, prejudgment interest, attorneys' fees and costs pursuant to paragraph 8 of the Contract, and grant PMCF such other and further relief as this Court deems just and proper.

### COUNT II
Breach of Contract – Indemnification/Alter Ego
(As to Defendant Stern Only)

48.     PMCF restates the allegations set forth in paragraphs 1-47 as through fully set forth herein.

17159795.6

49.     At all material times, Stern has been the sole owner and principal of LODJS.

50.     Stern dominated and controlled both LODJS and the Transaction.

51.     Stern received virtually all of the proceeds of the Transaction ("Sales Proceeds"), with LODJS receiving virtually none.

52.     By routing the Sale Proceeds to Stern rather than to LODJS, Stern willfully drained LODJS of monies that Stern knew would be sought by creditors such as PMCF.

53.     Stern routed the Sale Proceeds to himself rather than to LODJS with the intent to deprive creditors such as PMCF of satisfaction for their rightful claims.

54.     By this wrongful conduct, Stern remains liable for LODJS's obligations relating to the Transaction as an alter ego of LODJS.

55.     LODJS is obligated to PMCF as set forth above.

56.     As a result of Stern's actions, and his liability for the actions of LODJS, PMCF has suffered substantial damages.

WHEREFORE, PMCF respectfully requests that this Court enter a judgment against Stern, award PMCF compensatory damages in an amount to be determined by the Court, prejudgment interest, attorneys' fees and costs pursuant to paragraph 8 of the Contract, and grant PMCF such other and further relief as this Court deems just and proper.


## COUNT III
### Breach of Contract – Release
### (As to Defendant LODJS Only)

57.     PMCF restates the allegations set forth in paragraphs 1-56 as through fully set forth herein.

58.     PMCF has an enforceable Contract with LODJS.

59.     PMCF performed its duties under the Contract.

60.     LODJS was obligated by the Contract to obtain a full release of PMCF as part of any settlement it entered into.

61.     LODJS has breached the Contract as more fully set forth above.

62.     As a result of LODJS's breach of the Contract, PMCF has suffered substantial damages.

WHEREFORE, PMCF respectfully requests that this Court enter a judgment against LODJS, award PMCF compensatory damages in an amount to be determined by the Court, prejudgment interest, attorneys' fees and costs pursuant to paragraph 8 of the Contract, and grant PMCF such other and further relief as this Court deems just and proper.

**COUNT IV**
Breach of Contract – Release/Alter Ego
(As to Defendant Stern Only)

63.     PMCF restates the allegations set forth in paragraphs 1-62 as through fully set forth herein.

64.     At all material times, Stern has been the sole owner and principal of LODJS.

65.     Stern dominated and controlled both LODJS and the Transaction.

66.     Stern received virtually all of the proceeds of the Transaction ("Sales Proceeds"), with LODJS receiving virtually none.

67.     By routing the Sale Proceeds to Stern rather than to LODJS, Stern willfully drained LODJS of monies that Stern knew would be sought by creditors such as PMCF.

68.     Stern routed the Sale Proceeds to himself rather than to LODJS with the intent to deprive creditors such as PMCF of satisfaction for their rightful claims.

10

17159795.6

69.     By this wrongful conduct, Stern remains liable for LODJS's obligations relating to the Transaction as an alter ego of LODJS.

70.     LODJS is obligated to PMCF as set forth above.

71.     As a result of Stern's actions, and his liability for the actions of LODJS, PMCF has suffered substantial damages.

WHEREFORE, PMCF respectfully requests that this Court enter a judgment against Stern, award PMCF compensatory damages in an amount to be determined by the Court, prejudgment interest, attorneys' fees and costs pursuant to paragraph 8 of the Contract, and grant PMCF such other and further relief as this Court deems just and proper.

## COUNT V
### Fraudulent Transfer under Uniform Fraudulent Transfer Act, § 726.105
### (As to All Defendants)

72.     PMCF restates the allegations set forth in paragraphs 1-71 as through fully set forth herein.

73.     On information and belief, the Collected Fees during LODJS's wind down process totaled between approximately $15 million and $50 million.

74.     During the time that they were pursuing the Collected Fees, the Stern Defendants were aware of the DJSP Litigation or the potential for such litigation to occur, and that the DJSP Litigation would result in substantial costs to the Stern Defendants, including the right of PMCF to indemnity.

75.     After collecting the substantial Collected Fees through the wind-down process, upon information and belief, the Stern Defendants transferred part or all of the Collected Fees to Stern, the DJSP Defendants and/or the John Does (the "Fraudulent Transfers").

17159795.6

reason

76.     The Stern Defendants transferred the Collected Fees to Stern, the DJSP Defendants, and/or the John Does with actual intent to hinder, delay, or defraud PMCF from recovering on its rightful claim for indemnification, or without receiving a reasonably equivalent value in exchange for the Fraudulent Transfers.

77.     Upon information and belief, one or more factors of §726.105(1)(b) and §726.105(2), Fla. Stat. were present with respect to the transfers in question.

78.     As a direct and proximate result of the Fraudulent Transfers, PMCF has not been indemnified or fully satisfied by the Stern Defendants pursuant to the terms of the Contract.

79.     The Fraudulent Transfers are avoidable.

80.     As a result of the foregoing, PMCF is entitled to avoidance of the Fraudulent Transfers pursuant to the Florida Uniform Fraudulent Transfers Act.

WHEREFORE, PMCF respectfully requests that this Court enter a judgment against Defendants pursuant to the Florida Uniform Fraudulent Transfers Act, avoiding and recovering the Fraudulent Transfers, or the value thereof, from Defendants for PMCF's benefit and any other relief as the circumstances may require.


## COUNT VI
Fraudulent Transfer under Uniform Fraudulent Transfer Act, § 726.106
(As to All Defendants)


81.     PMCF restates the allegations set forth in paragraphs 1-80 as through fully set forth herein.

82.     On information and belief, the Stern Defendants' Collected Fees during LODJS's wind down process totaled between approximately $15 million and $50 million.

17159795.6

83.     During the time that they were pursuing the Collected Fees, the Stern Defendants were aware of the DJSP Litigation or the potential for such litigation to occur, as well as PMCF's demand for indemnification in connection with that litigation, and that the DJSP Litigation would result in substantial costs to the Stern Defendants, including the right of PMCF to indemnity.

84.     After collecting the substantial Collected Fees through the wind-down process, upon information and belief, the Stern Defendants transferred part or all of the Collected Fees to Stern, the DJSP Defendants and/or the John Does, some or all of whom were insiders.

85.     The Stern Defendants also transferred the Collected Fees without receiving a reasonably equivalent value in exchange for the Fraudulent Transfers.

86.     The Fraudulent Transfers were made while LODJS was insolvent or would become insolvent as a result of the Fraudulent Transfers, and Defendants knew or had reasonable cause to believe LODJS was insolvent.

WHEREFORE, PMCF respectfully requests that this Court enter a judgment against Defendants pursuant to the Florida Uniform Fraudulent Transfers Act, avoiding and recovering the Fraudulent Transfers, or the value thereof, from the Defendants for PMCF's benefit and any other relief as the circumstances may require.


**COUNT VII**
Tortious Interference with Contract
(As to DJSP Defendants and Stern)

87.     PMCF restates the allegations set forth in paragraphs 1-86 as through fully set forth herein.

13

17159795.6

88.     The DJSP Defendants and Stern were aware of the Contract at the time of the settlement between the DJSP Defendants and the Stern Defendants.

89.     The Contract was valid and binding at the time of that settlement.

90.     The DJSP Defendants took actions, as described above, for which there was no legal justification and intending to cause a breach of the Contract.

91.     To the extent that Stern is not an alter ego of LODJS as alleged in Count IV of this Amended Complaint, Stern also took actions, as described above, for which there was no legal justification and intending to cause a breach of the Contract.

92.     The Stern Defendants breached the Contract as more fully set forth above.

93.     As a result of these actions, PMCF has suffered substantial damages.

WHEREFORE, PMCF respectfully requests that this Court enter a judgment against the DJSP Defendants and Stern, award PMCF compensatory damages in an amount to be determined by the Court, prejudgment interest, and grant PMCF such other and further relief as this Court deems just and proper.


Dated: July 21, 2015            Respectfully submitted,

WALDMAN TRIGOBOFF HILDEBRANDT
 MARX & CALNAN, P.A.
Co-counsel for P&M Corporate Finance, LLC
500 East Broward Boulevard, Suite 1700
Fort Lauderdale, Florida 33394
Telephone: (954) 467-8600
Facsimile: (954) 467-6222

By:/s/ Glenn J. Waldman
        Glenn J. Waldman
            Florida Bar No. 374113
        Craig J. Trigoboff
            Florida Bar No. 880541

17159795.6

-AND-

HONIGMAN MILLER SCHWARTZ AND COHN LLP
Co-Counsel for P&M Corporate Finance, LLC
660 Woodward Avenue, Suite 2290
Detroit, Michigan 48226
Telephone: (313) 465-7412
Facsimile: (313) 465-7413
  Raymond W. Henney, Esq.
   (Pro Hac Vice)
  Michael P. Hindelang, Esq.
   (Pro Hac Vice)
  John J. Rolecki, Esq.
   (Pro Hac Vice)

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing was served electronically via the

ECF system on July 21, 2015, and via email on all counsel and parties of record on the Service

List below:

By: /s/ Craig J. Trigoboff
Craig J. Trigoboff
Florida Bar No. 880541


### <u>Service List:</u>

Jose M. Ferrer
BILZIN SUMBERG BAENA PRICE & AXELROD LLP
1450 Brickell Avenue, 23rd Floor
Miami, Florida 33131-3456
Telephone: (305) 350-7210
jferrer@bilzin.com


Robert M. Einhorn
ZARCO  EINHORN  SALKOWSKI
& BRITO
Miami Tower
100 Southeast 2nd Street
27th Floor
Miami, Florida 33131
Telephone: 305) 374-5418
reinhorn@zarcolaw.com

16